IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER WALLS,<br><br>                Plaintiff,<br><br>    vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>                Defendant. | **8:20-CV-413**<br><br>**MEMORANDUM AND ORDER ON MOTION FOR RECONSIDERATION** |

Christopher Walls has sued Union Pacific Railroad Company (Union Pacific) for negligence and negligence per se under the Federal Employers' Liability Act (FELA). In his negligence per se claim, Walls claims that an employee of Union Pacific violated Federal Railroad Administration regulation 49 C.F.R. § 218.103 and Union Pacific operating rule 8.2 when the employee threw a railroad switch early. Walls alleges that when the switch was thrown early, the train on which he was working had to stop, ejecting him from the rear car of the train and causing severe injury to his leg. In a January 14, 2022, Memorandum and Order, the Court granted Walls summary judgment on his negligence per se claim on the issue of Union Pacific's liability. Filing 72. Before the Court is Union Pacific's Motion for Reconsideration, which asks the Court to revisit its grant of summary judgment to Walls on his negligence per se claim. Filing 86. For the reasons stated herein, the Court denies Union Pacific's Motion.

## I.  BACKGROUND

The Court's January 14, 2022, Order provided a detailed background of the relevant events leading to this suit, Filing 72 at 1–5, which is incorporated here by reference. Briefly summarized, the facts are as follows.

1

On February 18, 2020, Walls travelled with two other Union Pacific employees—Toby Becker and Scott Jones—on one of Union Pacific's trains to a railyard in Topeka, Kansas. Filing 54-2 at 4–6; Filing 54-3 at 6–7. As the crew neared the Topeka yard in the afternoon, Jones exited the train to operate an electric, hand-operated switch. Filing 54-2 at 5; Filing 54-4 at 6–8. The train continued with Walls and Becker aboard for about another mile until it reached Milepost 70. Filing 54-2 at 5; Filing 54-4 at 7. At Milepost 70 is a signal that flashes colored lights so that train operators know when it is safe for the train to enter the Topeka yard. Filing 54-3 at 11; Filing 54-4 at 8; Filing 65-1 at 7–8. Once the train reached Milepost 70, Walls went to the rear car of the train and faced the signal at Milepost 70. Filing 54-2 at 5.

To enter the Topeka yard, the train needed to reverse directions and proceed rear-car-first into the yard. Filing 65-1 at 7; Filing 65-3 at 6–7. Railroad workers refer to this maneuver as a "shove" move. Filing 54-3 at 10–11. From his vantage point at the rear car, Walls could watch the signal at Milepost 70 to ensure that it did not flash red. Filing 54-3 at 10; Filing 54-4 at 6–7. If the signal went red before the rear of the train passed the signal at Milepost 70, Walls would have to radio Becker, who was operating the train from the locomotive, to stop the train. Filing 54-2 at 5; Filing 65-2 at 11–12.

Once Walls received approval to enter the Topeka yard, he radioed Becker to begin moving the train in reverse. Filing 54-3 at 11; Filing 65-2 at 8–9. Jones, standing a distance away at the switch operator, waited until he believed that he could see the rear of the train passing the signal at Milepost 70 and then threw the switch to allow the train to enter the Topeka Yard. Filing 54-4 at 8. Unfortunately, when Jones threw the switch, the rear of the train had not passed the signal. Filing 54-2 at 5; Filing 54-4 at 8–9. Walls, standing on the rear car of the train, saw the signal flash red when Jones threw the switch and ordered Becker to stop the train. Filing 54-2 at 5. When the

train stopped, slack between the train cars caused a chain reaction that ultimately led to Walls being ejected from the rear car. Filing 54-2 at 7, 9–10. Walls landed on a railroad tie and severely injured his leg. Filing 54-2 at 7–8, 12.

On October 12, 2020, Walls filed suit against Union Pacific, bringing a negligence claim under FELA in Count I and a FELA negligence per se claim in Count II. In his negligence per se claim, Walls alleged that Union Pacific, through its employee, Jones, violated a Federal Railroad Administration regulation when Jones threw the switch early, *i.e.*, before the rear of the train had passed the signal at Milepost 70. Filing 1 at 3–4. On August 13, 2021, Walls filed a Motion for Partial Summary Judgment, Filing 52, which this Court granted in part and denied in part. Specifically, the Court granted Walls summary judgment on the issue of liability as to his negligence per se claim and denied him summary judgment on his negligence claim. Filing 72. In its Order, the Court found that Jones violated 49 C.F.R. § 218.103(b)(4) and Union Pacific's operating rule 8.2 when he threw the switch early.

Union Pacific filed its pending Motion for Reconsideration on April 14, 2022. Filing 86. In its Motion, Union Pacific asks the Court to reconsider the narrow issue of whether Jones violated § 218.103(b)(4) and operating rule 8.2. Union Pacific provides several new arguments for its position concerning the proper reading of § 218.103(b)(4) and operating rule 8.2, including pointing to other parts of the regulation claiming such provisions assist in the interpretation of the relevant provision and providing the Court with guidance from the Federal Railroad Administration. Filing 87. Union Pacific also reiterates its argument that Walls's evidence is insufficient to take the issue of causation away from the jury. Filing 87 at 10–14

## II.   ANALYSIS

### A.  Standard of Review

The Eighth Circuit Court of Appeals has held that "district courts can reconsider earlier rulings 'to avoid later reversal.'" *Ayala v. CyberPower Sys. (USA), Inc.*, 891 F.3d 1074, 1077 n. 2 (8th Cir. 2018) (quoting *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992)); *see also K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) ("The district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995))). Although no Federal Rule of Civil Procedure expressly permits motions for reconsideration, these motions are typically construed as falling under Rule 59(e), which governs motions to alter or amend judgment, or Rule 60(b), which governs motions for relief from a judgment or an order. *See Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 997 (8th Cir. 2017). When a motion seeks reconsideration of a non-final order, it is best characterized as a motion under Rule 60(b). *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018) ("This court construes motions for reconsideration of non-final orders as motions under Rule 60(b) of the Federal Rules of Civil Procedure."). Moreover, because Union Pacific did not file its motion within 28 days of the Court's January 14, 2022, Order, as required by Rule 59(e), *see* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."), the Court shall consider Union Pacific's motion as being made under Rule 60(b).

Federal Rule of Civil Procedure 60(b) delineates several grounds on which a party may be relieved from a non-final order: mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; voidness; satisfaction of judgment; or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). "Rule 60(b) 'provides for extraordinary relief which may be granted only

upon an adequate showing of exceptional circumstances.'" *Williams*, 891 F.3d at 706 (quoting *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)). A motion for reconsideration is not the appropriate place to "tender new legal theories for the first time." *Id.* (quoting *Hagerman*, 839 F.2d at 414). Nor is it "a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). It is typically within the "sound discretion of the trial court" to grant or deny a Rule 60(b) motion. *McCormack v. Citibank, N.A.*, 100 F.3d 532, 542 (8th Cir. 1996) (quoting *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996)).

### B.  Interpretation of 49 C.F.R. § 218.103 and Operating Rule 8.2

In its Motion for Reconsideration, Union Pacific first argues that the Court erred when it concluded that the regulation at issue in this case, 49 C.F.R. § 218.103, and Union Pacific's operating rule 8.2 required Jones to throw the switch after the rear of the train passed Milepost 70. Filing 87 at 4–10. In support, Union Pacific argues that the text of the regulation and the operating rule show that both are only concerned with ensuring that a switch allows a train to proceed along its intended route. Filing 87 at 4–8. Union Pacific also claims that the Federal Railroad Administration's own interpretation of its regulation reveals that the regulation has nothing to do with the timing of throwing switches. Filing 87 at 8–9. In response, Walls urges the Court to stand by its interpretation of the regulation and the operating rule that it made in its January 14, 2022, Order. Filing 89 at 3–6.

FELA provides a federal cause of action to railroad employees who sustain injuries "in whole or in part from the negligence of any of the officers, agents, or employees of [the railroad company]." 45 U.S.C. § 51. "Under FELA, an employer's 'fault may consist of a breach of the

duty of care . . . or of a breach of some statutory duty.'" *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 984 (8th Cir. 2020) (alteration in original) (quoting *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958)). One source of a railroad's statutory duties comes from the Federal Railroad Safety Act. *See* 49 U.S.C. §§ 20101, *et seq.* Regulations promulgated by the Federal Railroad Administration are considered safety statutes under the Federal Railroad Safety Act.[1] *See Miller*, 972 F.3d at 984, 986 (noting, where the plaintiff alleged a violation of a Federal Railroad Administration regulation, "[i]t is true that under a FELA negligence per se theory, [the plaintiff] need not show that [the defendant railroad company] acted negligently in violating a safety regulation") *see also Ellenbecker v. BNSF Ry. Co.*, No. 4:19-CV-3038, 2021 WL 781384, at *11 (D. Neb. Mar. 1, 2021) ("[A] regulation promulgated by the [Federal Railroad Administration] is deemed to be a safety statute under the Federal Railroad Safety Act." (citing 45 U.S.C. § 54a)); *Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992) ("In an FELA action, the violation of a statute *or regulation* . . . automatically constitutes breach of the employer's duty and negligence per se." (emphasis added)); *Harper v. Norfolk S. Ry. Co.*, 992 F. Supp. 2d 795, 803–04 (S.D. Ohio 2014) (finding that a violation of Federal Railroad Safety Act regulation 49 C.F.R. § 218.103 can support a FELA negligence per se claim because "[The Federal Railroad Safety Act] and FELA are closely related," the regulation was directed towards safety, and other courts had allowed plaintiffs to submit evidence of a Federal Railroad Safety Act regulation violation to establish FELA negligence claims).

"If a plaintiff proves a railroad violated a statutory duty, then the plaintiff need not prove the common law elements of foreseeability, duty, or breach." *Miller*, 972 F.3d at 984. Indeed,

---

[1] The Federal Railroad Safety Act directs the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103. The Secretary delegated authority to the Federal Railroad Administration to "[c]arry out the functions and exercise the authority vested in the Secretary by the Federal Railroad Safety Act." 49 C.F.R. § 1.89(b).

6

violating a safety statute "creates liability under FELA . . . without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan*, 355 U.S. at 433. Thus, "[a] railroad's violation of a safety statute . . . is negligence per se." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 704 n.12 (2011).

The issue before the Court in its earlier Order granting Walls partial summary judgment was whether, as a matter of law, Jones throwing the switch early violated 49 C.F.R. § 218.103 and Union Pacific's operating rule 8.2.[2] *See In re Stevenson Assocs., Inc.*, 777 F.2d 415, 418 (8th Cir. 1985) ("[A] district court's interpretation and application of federal statutes or regulations . . . raise questions only of law."). Section 218.103 provides that switch operators like Jones must "[v]isually determine that switches are properly lined for the intended route and that no equipment is fouling the switches." 49 C.F.R. § 218.103(b)(4). Operating rule 8.2, which Union Pacific issued to comply with section 218.103, states, "Employees operating switches and derails must make sure the switches and derails are properly lined for the intended route." Filing 54-6 at 3.

Union Pacific's arguments in favor of its Motion for Reconsideration present new legal arguments supporting its interpretation of § 218.103(b)(4). However, "A motion for reconsideration is . . . not the appropriate place to 'tender new legal theories for the first time.'" *Arnold*, 627 F.3d at 721 (quoting *Hagerman*, 839 F.2d at 414). Essentially, Union Pacific is rearguing the merits of the case, which is an improper use of a Motion for Reconsideration. *See Broadway*, 193 F.3d at 990 (noting that a Rule 60(b) motion "is not a vehicle for simple reargument on the merits."). This ground alone is sufficient to deny Union Pacific's Motion. *See id.*

---

[2] 49 C.F.R. § 218.103 states that an employee who violates a railroad company's operating rule which "complies with the requirements of this section . . . shall be considered to have violated the requirements of this section." 49 C.F.R. § 218.103(a)(1). A violation of Union Pacific operating rule 8.2, therefore, constitutes a violation of 49 C.F.R. § 218.103. *See Harper*, 992 F. Supp. 2d at 805 (finding that violating an applicable operating rule issued in compliance with 49 C.F.R. § 218.103 constitutes a violation of 49 C.F.R. § 218.103).

Nevertheless, even if the Court entertained Union Pacific's Motion, it would still deny it. Initially, it is important to recognize that the regulation in question was issued pursuant to the FRSA, which Congress passed expressly "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA has a remedial purpose. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1192 (8th Cir. 2015) (observing that the FRSA has a "comprehensive remedial scheme"); *Ziparo v. CSX Transportation, Inc.*, 15 F.4th 153, 163 (2d Cir. 2021) (noting "the FRSA's remedial purpose"). Thus, regulations promulgated under the FRSA "should be broadly construed to effectuate its purpose." *Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000).

In its January 14, 2022, Order, the Court concluded that Jones making the observations he made and throwing the switch early, *i.e.*, before the rear car of the train passed Milepost 70, violated § 218.103(b)(4) and operating rule 8.2. The Court reasoned that the words "properly lined" in the regulation and operating rule involved more than simply, as Union Pacific argued, ensuring that the train was able to proceed along its intended route. Filing 72 at 10. Instead, by using the word "properly" to modify the word "lined," the Court concluded that the regulation encompassed the circumstances under which a switch is thrown. Filing 72 at 10 n.5 (relying on the dictionary definition of the word "proper," which means "appropriate to the circumstances or conditions," to determine that "properly lined" is circumstance-dependent (quoting *Proper*, Oxford English Dictionary, (3d ed. 2007), https://www.oed.com/view/Entry/152660#eid28227468)). The circumstances of this case required Jones to throw the switch after the rear of the car passed Milepost 70; otherwise, Walls would be forced to stop the train. Accordingly, the Court concluded, when Jones threw the switch early, he violated § 218.103(b)(4) and operating rule 8.2, rendering Union Pacific negligent per se.

Union Pacific takes issue with the Court's interpretation of the word "properly," asserting that it ignores the phrase "for the intended route" in the regulation. Filing 87 at 5. According to Union Pacific, the phrase "for the intended route" narrows the meaning of "lined." Filing 87 at 5. Union Pacific argues that the phrase "for the intended route" in the regulation shows that it is concerned solely with "the position of the switch points in relation to the intended route and does not address timing." Filing 87 at 7. The Court disagrees. The Court's interpretation appropriately considers that the throwing of the switch must allow the train to proceed along "the intended route." As the Court stated in its previous Order, the word "properly" is circumstance-dependent. Filing 72 at 10 n.5. As the circumstances in this case illustrate, Jones needed to throw the switch after the rear of the train passed Milepost 70 so that the train could proceed along its intended route of travel. However, the undisputed facts of this case demonstrate that, when Jones threw the switch early, Walls was forced to stop the train. *See* Filing 72 at 9. Therefore, Walls throwing the switch early prevented the train from proceeding along "the intended route." Further, Walls throwing the switch early resulted in the switch not being "properly lined." If the Union Pacific employee had visually determined the switch had been properly lined as required by the regulation, then the train would not have had to stop, resulting in Walls's injuries. Accordingly, when Jones threw the switch early, he did not "line" the switch properly so that the train could proceed along "the intended route," in violation of § 218.103(b)(4) and operating rule 8.2

Union Pacific contends that the Court's interpretation is contrary to guidance from the Federal Railroad Administration on what § 218.103(b)(4) requires. When issuing the final rule for the regulations found at 49 C.F.R. parts 217 and 218, the Federal Railroad Administration stated it designed the rule in response to a major railroad accident in 2005 in which a train "encountered an improperly lined switch that diverted the train from the main track onto an industry track, where

9

it struck an unoccupied, parked train." Railroad Operating Rules: Program of Operational Tests and Inspections; Railroad Operating Practices: Handling Equipment, Switches and Fixed Derails, 73 Fed. Reg. 8442-01, 8443 (Feb. 13, 2008). The Federal Railroad Administration further explained that subsections (b)(4) and (b)(5) of 49 C.F.R. 218.103

> require employees to make certain observations . . . . These requirements specify the need for the operating/verifying employee to take a good, hard look at the switch. For example, a proper observation would deduce whether the switch points fit properly against the stock rail, i.e. no gaps. The operating/verifying employee should certainly not be relying on second-hand knowledge of the switch or derail's position in verifying its position.

*Id.* at 8483. According to Union Pacific, the Federal Railroad Administration's guidance means that the regulation is aimed at ensuring that a train can pass safely over a switch to continue on its intended route, not at the timeliness of throwing switches. Filing 87 at 7–9.

Contrary to Union Pacific's argument, the Federal Railroad Administration's guidance does not say that the regulation never takes the timeliness of throwing a switch into account. It simply states that the regulation requires switch operators to make certain observations when throwing switches. No language stating that timeliness is a nonfactor under the regulation appears in the Federal Railroad Administration's guidance.[3] Instead, the Court finds it far more significant that the Federal Railroad Administration inserted the broad word "properly" into the regulation. *See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 705 (1995) (finding, while interpretating a provision of the Endangered Species Act, that it was significant that the Senate included "[a]n obviously broad word" in the act). By using the word "properly,"

---

[3] Indeed, the suggestion from Union Pacific that timeliness is a nonfactor under the regulation is puzzling to the Court. If the regulation never takes timing into account, an employee could theoretically comply with the regulation by throwing the switch two months, two weeks, or four hours before the train movement at issue. The Court concludes that the Federal Railroad Administration would not intend that such conduct could comply with its regulation. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

the Federal Railroad Administration ensured that the regulation would apply to this situation in which a switch operator throws a switch instead of limiting the regulation to instances when a switch operator diverts a train to the incorrect track.[4]

Section 218.103(b)(4) and operating rule 8.2 required Jones to throw the switch after the rear car of the train passed Milepost 70. When Jones threw the switch early, the switch was no longer "properly lined for the intended route." As a result of this mistake, the signal lights turned red and the engineer was required to immediately stop the train, preventing it from proceeding along "the intended route." This act of stopping the train caused a chain reaction that threw Walls off of the train. Had the Union Pacific employee complied with § 218.103(b)(4) and "[v]isually determine[d] that [the] switch[] [was] properly lined for the intended route[,]" this would not have happened. In fact, Jones' visual observations were mistaken, causing him to throw the switch early. Under the present circumstances, federal law requires that where Union Pacific violated § 218.103(b)(4), Union Pacific was negligent per se as a matter of law.

### C. Causation

Union Pacific also urges the Court to reconsider granting summary judgment in Walls's favor on the issue of causation. Filing 87 at 10–14. According to Union Pacific, there is a dispute of material fact over whether Walls throwing the switch early increased the risk of harm to Walls. Filing 87 at 10. The Court disagrees.

As explained in the Court's previous order, "FELA's language on causation . . . 'is as broad as could be framed.'" *McBride*, 564 U.S. at 691 (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)). Rather than the proximate cause standard applied in common law tort litigation, "a relaxed

---

[4] Union Pacific also points to a report from its expert, Mark E. Pollan, to support its interpretation. Interpretation of a regulation is a matter of law, however; thus Pollan's report is irrelevant to the issue before the Court. *See In re Stevenson Assocs., Inc.*, 777 F.2d 415, 418 (8th Cir. 1985) ("[A] district court's interpretation and application of federal statutes or regulations . . . raise questions only of law.").

standard of causation applies under FELA." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). "Under the FELA, 'the railroad will be liable if its or its agent's negligence played any part, even the slightest, in producing the employee's injury.'" *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) (quoting *Richardson v. Mo. Pac. R.R. Co.*, 677 F.2d 663, 665 (8th Cir. 1982)); *see also Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980) ("The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit.").

The issue on causation before the Court in its prior Order was whether Walls being forced to stop the train because Jones threw the switch early caused, "even in the slightest," Walls to fall from the train and land on a railroad tie. The Court concluded that the undisputed evidence showed that the train stopped and Walls fell from the rear car. Filing 72 at 11–12. Union Pacific had presented no evidence providing an alternative explanation for why Walls fell. Filing 72 at 11–12. Thus, the Court concluded that Walls had shown "that the undisputed evidence contain[ed] no genuine issue of material fact that the train stopping caused his injuries." Filing 72 at 12.

Union Pacific presents no newly discovered evidence that this conclusion is incorrect. Instead, Union Pacific reiterates their argument that only a "normal stop of the train" occurred. First, Union Pacific is incorrect that, under these circumstances, the stopping of the train was "normal," because the train was not supposed to stop when it did. Instead, had Jones thrown the switch at the correct time, the train would have proceeded into the railyard. Second, as the Court explained in its Order, "The issue is not if the train stopping was 'normal,' that Becker stopped the train negligently, or that the train had an excessive amount of slack. The only question is whether the train stopping caused Walls to be ejected from the rear car." Filing 72 at 12. Because Jones throwing the switch early caused the train to stop, which "played [a] part, however small, in the

12

injury," *Fletcher*, 621 F.2d at 909, and Union Pacific provided no alternative explanation for the train stopping and Walls falling from the train necessitating resolution by a jury, Walls was entitled to summary judgment on the issue of causation. Accordingly, the Court denies Union Pacific's Motion for Reconsideration.

## III.    CONCLUSION

The Court concludes that reconsideration of its prior Order is unwarranted. Accordingly,

IT IS ORDERED:

1.   Union Pacific's Motion for Reconsideration, Filing 86, is denied.

Dated this 22nd day of July, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge