IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER WALLS,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br>a Delaware corporation,<br><br>Defendant. | 8:20CV413<br><br>MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE |

## I. INTRODUCTION

Plaintiff Christopher Walls sued defendant Union Pacific Railroad Company (Union Pacific) for negligence and negligence per se under the Federal Employers' Liability Act (FELA) and the Federal Railroad Administration (FRA) regulations. After various rulings on the parties' motions, *see* Filing 72; Filing 92; Filing 119, "[t]he only remaining issue[s] for determination by the finder of fact [are] the amount of damages Plaintiff should be awarded as a result of Defendant Union Pacific's negligence, and Union Pacific's affirmative defense of failure to mitigate." Filing 95 at 2 (Final Pretrial Order). Trial on remaining issues in this matter is set to begin on September 13, 2022.

This case is before the Court on Walls's August 16, 2022, Motions in Limine, seeking exclusion of five categories of evidence. Filing 97. Union Pacific filed its Responses to Plaintiff's

1

Motions in Limine on August 30, 2022. Filing 116. Walls filed his Reply Brief in Support of Plaintiff's Motions In limine on September 2, 2022. Filing 120. For the reasons stated below, Walls's Motions in Limine are granted in part and denied in part as set out in more detail in this decision.

## II. LEGAL ANALYSIS

### A. Evidence of Collateral Source Benefits

The first category of evidence that Walls seeks to exclude is "[a]ll evidence, arguments and comments concerning Plaintiff receiving collateral source benefits including, but not limited to, U.S. Railroad Retirement Board (RRB) sickness benefits." Filing 98 at 2, 10. He argues that governing law precludes admission of such evidence at trial. Filing 98 at 10. Therefore, he asks that all witnesses called by Union Pacific be instructed that they may not mention his receipt of RRB benefits or any other collateral source benefits. Filing 98 at 11. Union Pacific argues that the decisions Walls relies on do not establish the per se rule he asserts. Filing 116 at 1–2. Union Pacific argues that evidence of collateral source benefits may be admissible if Walls "opens the door" by placing his financial condition at issue, "to show a lack of motivation for returning to work," to show that he has failed to mitigate his damages, and as "fodder for cross-examination of his economist." Filing 116 at 3. Therefore, Union Pacific asserts that the Court should deny this Motion at this time. Filing 116 at 3. In reply, Walls argues that "lack of motivation for returning to work" is synonymous with "malingering," so the evidence is inadmissible. Filing 120 at 2–3. He argues further that if Union Pacific believes he as "opened the door" at trial, it should be required to raise the issue with the Court outside the presence of the jury. Filing 120 at 3.

The only controlling authorities on which Walls relies are *Eichel v. New York Central R. R.*, 375 U.S. 253 (1963) (per curiam), and *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 200 (8th

2

Cir. 1981), *cert. denied*, 455 U.S. 1000 (1982), and he cites the latter only in passing. Filing 98 at 11. The Court finds *Vanskike* particularly instructive. In *Vanskike*, the Eighth Circuit Court of Appeals explained the rule in this Circuit concerning collateral source payments in FELA cases as follows:

> As a general rule, evidence of collateral source payments may be admitted for the competent purpose of showing malingering unless the prejudicial impact attending the possibility that the jury will consider it for the purpose of directly reducing recoverable damages is so high, when compared to its probative value for the acceptable purpose, that its admission would be an abuse of discretion. See generally Annot., 47 A.L.R.3d 234 (1973); Fed.R.Evid. 403. A stricter rule is applied, however, in FELA actions. In *Eichel v. New York Central R. R.*, 375 U.S. 253, 255-56, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (per curiam), the Supreme Court held that collateral source payments are inadmissible as bearing on the extent or duration of disability in FELA cases.

*Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 200 (8th Cir. 1981). The court in *Vanskike* understood *Eichel* to state a "per se rule in FELA cases." *Id.* The court then observed that the collateral source benefits were also inadmissible on grounds of relevancy. *Id.* This was so, because the malingering issue was separable from the collateral source issue, and the railroad was able to present evidence about the plaintiff's refusal to apply for or consider jobs that would pay less than $15,000 per year (which was the amount he was receiving in collateral source benefits), which "went to the heart of the malingering issue." *Id.*

To the extent that *Eichel* and *Vanskike* establish a per se rule of inadmissibility of evidence of collateral source benefits in FELA cases, however, such rule is limited to prohibiting use of such evidence to show "malingering," *i.e.*, the extent or duration of disability. *Id.* at 200. Thus, another judge in this district recently held as follows on a motion to exclude references to payments the plaintiff had received from a collateral source in a FELA case:

> Ordinarily payments received from collateral sources are not allowed into evidence. *Hannah v. Haskins*, 612 F.2d 373, 375 (8th Cir. 1980). But the Eighth Circuit has

>also determined that when the plaintiff makes a specific reference to collateral source payments on direct examination, the scope of permissible inquiry is set by the direct examination, and the usual rules on cross-examination apply. *Lange v. Missouri Pac. R. Co.,* 703 F.2d 322, 324 (8th Cir. 1983). And under the rules of cross-examination, it is plausible that the collateral source payments might be relevant, based on the plaintiff's testimony on direct examination, to the plaintiff's credibility. *Id.* So, initially BNSF will not be allowed to introduce evidence of collateral source payments, *see Haskins*, 612 F.3d at 375, and Siemers' motion will be granted on those grounds. However, if Siemers opens the door to those benefits, then they might be relevant for purposes of cross-examination. Accordingly, the Court will grant Siemers' motion on this issue with the above caveat.

*Siemers v. BNSF Ry. Co.*, No. 8:17-CV-360, 2019 WL 2124253, at *1 (D. Neb. May 15, 2019); *see also Logsdon v. BNSF Ry. Co.*, No. 8:15-CV-232, 2017 WL 3701212, at *5 (D. Neb. Aug. 25, 2017) (for essentially the same reasons, denying a plaintiff's motion in limine concerning collateral source benefits in a FELA case without prejudice to reassertion at trial); *Johnson v. Union Pac. R. Co.*, No. 8:05CV373, 2007 WL 2914886, at *8 (D. Neb. Oct. 4, 2007) (holding that, because collateral source benefits might be relevant and admissible in a FELA case to refute the plaintiff's claim that he lacked financial viability as a result of the accident, collateral source evidence could not be offered at trial "absent first raising the issue with the court for further assessment in the context of the actual trial proceedings").

In this case, the Court concludes that Union Pacific's assertion that collateral source benefits are relevant "to show a lack of motivation for returning to work," Filing 116 at 3, is essentially an argument that the evidence is admissible to show "malingering," which is forbidden under *Vanskike* and *Eichel*. Two of Union Pacific's additional bases for admitting this evidence—"to show that [Walls] has failed to mitigate his damages, and as fodder for cross-examination of [Walls's] economist," Filing 116 at 3—are too vague to be assessed outside of the context of the actual trial proceedings. Nevertheless, there is some possibility that Walls will "open the door" by placing his financial condition at issue, Filing 116 at 3, or that this evidence might otherwise

4

become relevant, so this Motion in Limine is granted only to the extent that Union Pacific cannot raise collateral source evidence at trial without first raising the issue before the Court for assessment in the context of the trial proceedings. See *Siemers*, 2019 WL 2124253, at *1; *Johnson,* 2007 WL 2914886, at *8.

### B. Evidence of Prior Medical Treatment or Conditions

Next, Walls seeks to exclude "[a]ll evidence, statements or comments concerning Plaintiff's prior medical treatment/conditions that are not at issue in this litigation." Filing 98 at 2, 11. Walls argues that his past medical history includes treatment for conditions wholly unrelated to his claim in this matter and that there is no evidence that any of his prior medical conditions disabled him from working for Union Pacific at the time of the incident or were symptomatic at the time of his incident. Filing 98 at 11–12. He also argues that Union Pacific has not disclosed any medical expert evidence that any of his medical conditions caused or contributed to his injuries. Filing 98 at 12. Union Pacific points out that Walls's general health, including his cardiac issues, diabetes, and obesity, all bear on his life expectancy as well as his ability to obtain and retain employment. Filing 116 at 3. Union Pacific argues that Walls's anxiety, which arose before the accident, is relevant to any claim that he suffered emotional injury as a result of the accident at work. Filing 116 at 4. In reply, Walls argues that Union Pacific has not disclosed any medical expert witness opinions that any prior medical conditions have shortened Walls's work or life expectancy. Filing 120 at 4–5.

The Eighth Circuit Court of Appeals has addressed the issue of the effect of medical conditions not related to the accident in a FELA case, as follows:

> [W]hen faced with conflicting testimony about the cause of a railroad worker's inability to work, it is for the jury to determine damages in light of all of the evidence. We agree with the First Circuit that evidence related to a subsequent

5

>independent debilitating condition should be admitted if there is medical testimony regarding the effect of the subsequent condition on the worker's life and work expectancy.

*Villa v. Burlington N. & Santa Fe Ry. Co.*, 397 F.3d 1041, 1045 (8th Cir. 2005). The court also observed that "it is 'a legitimate question of fact for the jury ... as to whether [plaintiff's] physical inability to resume his former employment' was caused by his injury or by an independent condition." *Id*. at 1046 (quoting *Jordan v. Atchison, T & S.F.R. Co.*, 934 F.2d 225, 227 (9th Cir. 1991)). Similarly, preexisting medical conditions may be relevant to the nature and extent of the injury and to determination of causation (such as aggravation of a prior injury or condition). *Siemers v. BNSF Ry. Co.*, No. 8:17-CV-360, 2019 WL 2124253, at *2 (D. Neb. May 15, 2019). This Court can think of no reason why medical expert testimony on the effect of a condition on the worker's life and work expectancy should not be required when the condition is preexisting, as it is when the condition is subsequent to the incident at issue in the case.

In this case, Union Pacific points to evidence that Walls reported to his therapist that his doctor had diagnosed him with early onset arthritis; that he has diabetes, a heart condition, and high blood pressure; and that he was concerned that these conditions might affect his ability to return to work. Filing 116 at 4. This is a reasonable reading of the cited progress note. Filing 118-1 at 1. Union Pacific also points to an intake form with the therapist in which Walls reported he suffered anxiety before the accident. Filing 116 at 4. What is missing from Union Pacific's evidence, at least as presented in response to Walls's Motion in Limine, is "medical testimony regarding the effect of the[se] condition[s] on [Walls's] life and work expectancy," which the Eighth Circuit Court of Appeals stated was required for admission of the evidence for the purposes Union Pacific asserts. *Villa*, 397 F.3d at 1045. Thus, this Motion in Limine is granted until and unless Union Pacific produces the necessary medical testimony on the effect of the conditions on

6

Walls's life and work expectancy. If Union Pacific is able to admit such medical testimony, evidence regarding such prior medical treatments/conditions of the Plaintiff will be allowed.

### C. Untimely Disclosed Evidence or Witnesses

Walls also seeks to exclude "evidence or testimony that was not timely disclosed under the Federal Rules of Civil Procedure and the Court's Final Progression Order in accordance with Rule 37(c) of the Federal Rules of Civil Procedure." Filing 98 at 12. Walls asserts that Union Pacific has untimely disclosed "Bates CP-Walls 002255 and CP-Walls 2551-2579," and that he is "unsure" whether Union Pacific intends to offer other untimely disclosed evidence at trial. Filing 98 at 13. Walls does not otherwise identify the evidence in question. Walls argues that he has been unable to conduct any discovery on the documents and would be greatly prejudiced if they were allowed to be presented at trial, although he does not explain how. Filing 98 at 113.

With its Response, Union Pacific submits the documents it believes are at issue, consisting of a list of Union Pacific conductors and engineers who have had knee replacements since 2015, Filing 118-3 (UP-CWALLS 002255), and Walls's military records, Filing 118-4 at 1-29 (UP-CWALLS 002551–002579). Union Pacific states that the first document was relied upon by Union Pacific's vocational rehabilitation expert, Cynthia Bartmann, to form her opinions, and was produced timely with her report. Filing 116 at 5. Union Pacific argues that the document was produced to Walls eleven days before a Rule 30(b)(6) deposition and that the witness testified about working with "train engine and yard employees" who have had one or both knees replaced and thereafter worked at their prior jobs, but Walls did not follow-up on this testimony. Filing 116 at 6 (citing Filing 92-2 at 58:18–59.7). Union Pacific argues that it requested the military records on July 16, 2021, received them on July 28, 2022, and produced them to Walls on August 9, 2022. Filing 116 at 6. Union Pacific argues this timeline shows that any "delay" was not attributable to

7

Union Pacific. Filing 116 at 6. Union Pacific also argues that any "delay" was not prejudicial to Walls, because Walls had access to the same records. Filing 116 at 6. Union Pacific represents that it has not identified the military records as a trial exhibit, but that it reserves the right to use them for impeachment. Filing 116 at 6.

Walls's Reply suggest that, despite the different numbering, the parties are talking about the same documents. Filing 120 at 6. Walls reiterates that Union Pacific did not satisfy its disclosure obligations as to these documents. Filing 120 at 6.

Rule 37 of the Federal Rules of Civil Procedure bars admission at trial of undisclosed evidence. However, it should be obvious to the parties that the Court cannot effectively rule on a motion in limine without the precise evidence at issue before the Court. Nevertheless, it all too often appears that "the parties think the court lives in the discovery file." *United States v. Yuot*, No. CR 07-4091-MWB, 2008 WL 2954669, at *1 (N.D. Iowa July 25, 2008). It appears from Walls's Reply that the documents identified by Union Pacific are precisely the same documents that Walls identifies by similar but not identical page stamps and that Walls does not describe at all. The remaining problem is that the record provided to the Court with regard to the Motions in Limine does not conclusively demonstrate whether the pertinent documents were timely disclosed. This Motion in Limine is denied without prejudice to reassertion at trial.

### D. Evidence of Other Jobs

Walls's fourth Motion in Limine seeks exclusion of "evidence of jobs that are beyond his physical capacity, outside of his community, or are not 'bona fide' employment offers." Filing 98 at 13. Walls argues that evidence of such jobs does not support a failure-to-mitigate damages defense, so such evidence should be excluded. Filing 98 at 13. Union Pacific responds that the evidence Walls seeks to exclude should be admitted at trial and the jury should be able to determine

what weight to give it when deciding whether Walls failed to mitigate his damages. Filing 116 at 7. Union Pacific argues that Walls's physical capabilities are in dispute; that jobs exist within a reasonable commuting distance of Walls's residence in a rural area; and that there is no limitation on admissible evidence of job opportunities to "bona fide" offers. Filing 116 at 7. In reply, Walls offers arguments about what he believes the evidence will show and reiterates his objections to Union Pacific's anticipated evidence. Filing 120 at 9–11.

      In a FELA case, the Eighth Circuit Court of Appeals imposed no limitations like those Walls asserts here on the evidence of jobs relevant to a failure-to-mitigate defense. *See Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 858 (8th Cir. 2006). Instead, the court considered a railroad's evidence of jobs listed in the *Dictionary of Occupational Titles* that the railroad employee, who had chosen not to work in any capacity, could have performed; evidence of jobs he could have applied for but did not both within the railroad and elsewhere without obtaining further education; and evidence of the income he could have earned in a job outside or inside the railroad without obtaining further education. *Id.* Furthermore, applicable model jury instructions establish "reasonableness" considerations as paramount when considering the sufficiency of an employee's efforts to mitigate damages. *See* 8th Cir. Model Jury Instruction 15.32, n.6 (stating that, if the evidence supports an instruction on failure to mitigate damages in a FELA case, the appropriate instruction is, "If you find that the defendant has proved that the plaintiff has failed to take reasonable steps to minimize [(his) (her)] damages, then your award must not include any sum for any amount of damage which you find plaintiff might reasonably have avoided by taking such steps."); *Niemiec*, 449 F.3d at 858 n.3 (explaining that the appropriate instruction on failure-to-mitigate damages in a FELA case was the Iowa model stating, "(1) there was something the plaintiff could have done to mitigate his loss, (2) requiring the plaintiff to do so was reasonable

under the circumstances, (3) the plaintiff acted unreasonably in failing to undertake the mitigating activity, and (4) a casual connection exists between the plaintiff's failure to mitigate and the damages claimed"). In the Court's view, it is for the jury to decide what jobs are reasonably considered beyond Walls's physical capacity; whether it is reasonable under the circumstances for him to take a job outside of his community and to commute to and from it; and whether any job offers, or for that matter any job listings, are sufficiently "bona fide" or legitimate to be reasonably available to Walls. This Motion in Limine is denied.

### E.  Other Evidence Relating to Affirmative Defenses

As its last Motion in Limine, Walls seeks a ruling preventing Union Pacific from offering at trial "Evidence supporting Defendant's affirmative assertions that (1) Plaintiff failed to mitigate his damages; and (2) Plaintiff's injuries were caused by pre-existing conditions or other contributory or concurrent conditions or factors; or, alternatively, . . . facts, documents, and witnesses not identified by [Union Pacific] at its 30(b)(6) deposition on the topics." Filing 98 at 15. Walls argues that Union Pacific is bound by the testimony of its designee, Kristi Girard-Deardorff, taken March 25, 2022, with regard to the facts, documents, and witnesses supporting Union Pacific's assertions that he failed to mitigate his damages and that his injuries and damages are the result of pre-existing conditions or other contributory or concurrent conditions. Filing 98 at 18. He argues, however, that Union Pacific's Rule 30(b)(6) deponent offered no facts or evidence to support Union Pacific's defenses. Filing 98 at 18–19. Union Pacific disputes Walls's characterization of the content of its Rule 30(b)(6) deponent's testimony on these issues, asserts that its deponent identified witnesses who would provide pertinent testimony, and asserts that it has adequately disclosed all relevant evidence. Filing 116 at 8–10. In reply, Walls disputes Union Pacific's characterization of its Rule 30(b)(6) deponent's testimony. Filing 120 at 13–16.

As a judge of this district has explained, "[A] number of courts that addressed the issue have held that a corporation is bound to the scope of 30(b)(6) answers including claims of ignorance, though some courts consider whether the information was not known or inaccessible at the time." *Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014). On the other hand, a Rule 30(b)(6) deposition is not the full scope of the discovery process. *Id.* Thus, "[w]hile 30(b)(6) deponents have an obligation to adequately prepare, depositions under 30(b)(6) are not meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position." *Id.* Thus, it is appropriate to hold a defendant to its representative's answers at a Rule 30(b)(6) deposition only to the extent that topics were clear at the time of the original deposition and were not subject to further discovery. *Id.* The Court declines to sift through the entire transcript of Union Pacific's Rule 30(b)(6) deponent, Filing 99-2, offered in support of Walls's Motions in Limine, to determine the context in which the snippets of testimony on which Walls relies were made, whether the topics were clear, and whether the deponent adequately identified other evidence responsive to questions the deponent could not answer herself. Certainly, if Union Pacific offers evidence or witnesses providing information contrary to the Rule 30(b)(6) deponent's testimony, Walls is free to renew this motion or to counter Union Pacific's evidence or impeach its witnesses with Rule 30(b)(6) deposition testimony. For now, however, this Motion in Limine is denied without prejudice to challenges at trial to specific evidence that Walls believes was not adequately identified by the Rule 30(b)(6) deponent.

### III. CONCLUSION

The Court has considered each of the categories of evidence Walls asserts should be excluded at trial. Accordingly,

IT IS ORDERED that Walls's August 16, 2022, Motions in Limine, Filing 97, are granted in part and denied in part as set out in more detail in this decision.

Dated this 6th day of September, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge